UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KENNY BAZILE,

Plaintiff,

v.

9:25-CV-1602 (AMN/PJE)

DONALD UHLER, et al.,

Defendants.

---

APPEARANCES:

KENNY BAZILE
Plaintiff, pro se
18-A-3552
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034

ANNE M. NARDACCI
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

Pro se plaintiff Kenny Bazile commenced this action in the Western District of New York by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with application to proceed in forma pauperis ("IFP"), among other things. *See* Dkt.

No. 1 ("Compl."); Dkt. No. 13 ("IFP Application").[1] By Decision and Order entered on November 14, 2025, the Honorable John L. Sinatra, Jr. granted the IFP Application, dismissed certain of plaintiff's claims, and severed and transferred plaintiff's claims arising from his confinement at Upstate and Gouverneur Correctional Facilities to the Northern District of New York pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a). Dkt. No. 30 ("Initial Screening Order").[2]

## II. DISCUSSION

The legal standard governing review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the Initial Screening Order and it will not be restated in this Decision and Order. *See* Initial Screening Order at 2-5.

### A. Summary of the Relevant Allegations in the Complaint

With respect to the claims before this Court, the complaint asserts allegations of wrongdoing related to plaintiff's confinement at Upstate and Gouverneur Correctional Facilities. *See generally* Compl. Although the pleading is far from a model of clarity, the following facts are set forth as alleged by plaintiff in his complaint.

In April 2022, plaintiff was transferred to Green Haven Correctional Facility. Compl. at 28. Approximately five days later, plaintiff was "jumped" and "stabbed" in the yard by "2 sets

---

[1] Plaintiff also paid the filing fee in full.

[2] Judge Sinatra retained plaintiff's claims arising out of his confinement at Attica and Elmira Correctional Facilities, and transferred plaintiff's claims arising out of his confinement at Green Haven Correctional Facility to the Southern District of New York. *See* Initial Screening Order at 11-15, 24-25.

of . . . inmates[.]" *Id.* Plaintiff did not receive an MRI or x-ray for his injuries. *Id.* Instead, plaintiff was relocated to the special housing unit and thereafter transferred to Upstate Correctional Facility. *Id.*

Following plaintiff's arrival at Upstate Correctional Facility, he continued complaining about his medical issues, had blood, urine, and stool samples taken, and was ultimately diagnosed with a urinary tract infection ("UTI"). Compl. at 28.

On an unidentified date while still incarcerated at Upstate Correctional Facility, plaintiff returned his razors to an unidentified official after shaving. Compl. at 28. Thereafter, unidentified officials searched plaintiff and his "bunkie" and accused them of stealing a razor. *Id.* Plaintiff was then ordered to go to the shower area of the cell, and after his "bunkie" was removed, unidentified officials "punched" plaintiff in the head and one of these officials "put his finger in [plaintiff's] rectum" while questioning plaintiff about the razor. *Id.*

Following the use-of-force incident, plaintiff was evaluated by a nurse, who sent him back to his cell. Compl. at 28. Plaintiff arrived at his cell to find "most of [his] clothes" "destroyed" and his "legal mail . . . missing." *Id.* Thereafter, plaintiff spoke with an unidentified corrections sergeant regarding the use-of-force incident but refused to speak with this official more than once because he "fear[ed] for [his] life." *Id.* At some point thereafter, plaintiff was "sent back to Attica[.]" *Id.*

In January 2023, plaintiff underwent surgery for a hernia. Compl. at 29. At some point thereafter, plaintiff was transferred to Gouverneur Correctional Facility where he was again diagnosed with a UTI and given "antibiotics" that did not work. *Id.* Apparently around this

time, plaintiff had been waiting two years for an MRI on his back, which was not aligned properly. *Id.* At some point in or before February 2024, plaintiff was transferred to Elmira Correctional Facility, where he was approved for an MRI. *Id.* at 29, 35.

The complaint names only the Superintendents at each of the correctional facilities where plaintiff was housed and six "John Doe" officials as defendants. *See* Compl. at 1-2. It is unclear from the allegations in the complaint where any of the "John Doe" officials were employed, or how plaintiff believes these officials violated his federal rights.

Liberally construed, the complaint asserts a Fourth Amendment unlawful search claim, an Eighth Amendment excessive force claim, an Eighth Amendment failure-to-protect claim, and a Fourteenth Amendment destruction of property claim against Upstate Correctional Facility Superintendent Uhler, and an Eighth Amendment medical indifference claim against Gouverneur Correctional Facility Superintendent Rockwood.

Plaintiff seeks money damages and injunctive relief. Compl. at 15. For a more complete statement of plaintiff's claims, reference is made to the complaint.

**B. Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the

vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

**1. "Doe" Defendants**

When the name of an individual defendant is unknown, it is not inappropriate to identify him or her in the pleading as a "Doe" defendant. However, the pleading must allege facts sufficient to plausibly suggest that each "Doe" defendant was personally involved in the alleged constitutional deprivations. *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94 (S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against "members of the 'Special Search Team' and 'ESU Officers'" and noting that, "[t]o the extent that [plaintiff] does not know the names of the members of the Special Search Team or ESU Officers involved, he may name 'John Doe' defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should

Little chose to do so"); *Williams v. 120 PCT Undercover*, No. 11-CV-4690, 2011 WL 13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing complaint without prejudice where plaintiff's claims provided information about the alleged constitutional deprivations, but were brought against "the 120 Precinct and District 9, a police precinct and district of the New York City Police Department"). "Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, No. 15-CV-1599, 2017 WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017).

In this case, the complaint asserts Section 1983 claims based on alleged wrongdoing experienced by plaintiff during his incarceration at five different correctional facilities. It is entirely unclear where plaintiff was incarcerated when he interacted with each “Doe” defendant, or how plaintiff believes that each “Doe” defendant violated his federal rights.

Accordingly, insofar as plaintiff intended to assert one or more Section 1983 claims against one or more “John Doe” defendants based on wrongdoing that occurred during his incarceration at Upstate or Gouverneur Correctional Facilities, those claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**2. Superintendents**

The Second Circuit recently made clear that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009)). If a defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

Here, plaintiff names Superintendents Uhler and Rockwood as defendants without any allegations of wrongdoing by either of these individuals in the body of the complaint. The complaint does not, for example, allege that either defendant Uhler or defendant Rockwood directly participated in the alleged constitutional violations that plaintiff experienced, or were aware that plaintiff faced a risk of harm, yet failed to address the matter.[3] Indeed, it is entirely

---

[3] The law is also well-settled that inmates do not have a constitutional right of access to an investigation into alleged wrongdoing, and that the failure to remedy harm that is not ongoing cannot give rise to a cognizable Section 1983 claim. *See, e.g., DeShaney v. Winnebego Soc. Servs*., 489 U.S. 189, 196 (1989) (The Due Process Clause "generally confers no affirmative right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *Pine v. Seally*, No. 9:09-CV-1198 (DNH/ATB), 2011 WL 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("To the extent that plaintiffs attempt to assert a separate constitutional claim of 'failure to investigate,' the law is . . . clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.") (citing *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases)); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."); *cf. Burton v. Lynch*, 664 F. Supp. 2d 349, 362 (S.D.N.Y. 2009) ("A superintendent cannot 'remedy' a violation of constitutional rights which has already ceased by ordering some change in prison conditions.").

unclear how and when, if at all, either of these officials may have violated plaintiff's federal rights. *See generally*, Compl. Thus, the Court has no basis to plausibly infer from the allegations in the complaint that defendants Uhler and Rockwood were personally involved in violating plaintiff's federal rights.

Accordingly, plaintiff's Section 1983 claims against defendants Uhler and Rockwood are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**C. Dismissal with Leave to Amend**

The Second Circuit has held that a district court "should not dismiss [a pro se plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation omitted). In any amended complaint that plaintiff submits in response to this Decision and Order, he must set forth a short and plain statement of the facts on which he relies to support his claim that any individual named as a defendant was a state actor who engaged in misconduct or wrongdoing that violated his constitutional rights. Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into his amended complaint by reference.

Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss the portion of this action that remains in this District without prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Section 1983 claims based on wrongdoing at Upstate and Gouverneur Correctional Facilities are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that if plaintiff wishes to proceed with any claims based on alleged wrongdoing arising during his confinement at Upstate and Gouverneur Correctional Facilities as detailed in the original complaint, he must file an amended complaint as directed above within thirty (30) days from the filing date of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th

Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: December 9, 2025
Albany, NY

Anne M. Nardacci
U.S. District Judge